UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
ORLANDO ORTIZ,

                 Petitioner,

                              MEMORANDUM AND ORDER
      -against-                 18-CV-4407(JS)

CHRISTOPHER MILLER,

                 Respondent.
----------------------------------X
APPEARANCES
For Petitioner:      Orlando Ortiz, pro se
                  #15-A-2062
                  Great Meadow Correctional Facility
                  P.O. Box 51
                  Comstock, New York 12821

For Respondent:     Andrea M. DiGregorio, Esq.
                  Nassau County District Attorney's Office
                  262 Old Country Road
                  Mineola, New York 11501

SEYBERT, District Judge:

      Pending before the Court is pro se petitioner Orlando Ortiz's ("Petitioner") Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He raises five issues: (1) that the prosecution failed to disprove his justification defense beyond a reasonable doubt; (2) that the trial court erred in failing to provide a jury charge for a lesser included offense; (3) that a missing witness charge was improperly given; (4) that he was entitled to a hearing related to allegations of juror misconduct; and (5) that the imposed sentence was harsh and excessive. For the following reasons, the Petition is DENIED in its entirety.

BACKGROUND

I.  The Offense Conduct

On December 23, 2013, at approximately 6:00 P.M.,
Richard Baccus ("Baccus") went to Ay Caramba Restaurant (the
"Restaurant"), on West Merrick Road in Nassau County, New York.
(Tr. 1280:8-1281:21.)[1] Baccus lived close to the Restaurant and
would frequent the location a few times per week, this time
bringing a Christmas tree to give to the Restaurant. (Tr. 1281:19-
1283:1.) After Baccus arrived, Petitioner, Petitioner's brother
Reynaldo Ortiz, and Deo Singh ("Singh") also came to the
Restaurant; Elvis Hernandez ("Hernandez") was working at the
Restaurant that night. (Tr. 1082:25-1086:1; 1280:8-17; 1284:5-
1284:20.) At approximately 11:45 P.M. Hernandez noticed a verbal
dispute began between the aforementioned patrons, which eventually
turned physical. (Tr. 1287:24-1289:2.) According to Singh, the
argument was mainly between Baccus and Petitioner, and it was about
Baccus claiming he was security and carried a badge. (Tr. 1092:19-
1094:15.) At one point, Hernandez had to break up the fight, which
appeared to be between Petitioner and his brother against Baccus,
and asked Baccus to leave the establishment. (Tr. 1289:21-

---

[1] Transcripts can be found on the docket as follows: Hearing
Transcript pp. 1-488, D.E. 11-1; 10/27 Trial Transcript pp. 1-
625, D.E. 11-3; 11/17 Trial Transcript pp. 626-1276, D.E. 11-4;
11/25 Trial Transcript pp. 1277-1964, D.E. 13; 12/8 Trial
Transcript pp. 1965-2682, D.E. 12-1; 12/17 Trial Transcript pp.
2683-3022, D.E. 12-2; Sentencing Transcript 11-2.

1290:22.)    Baccus   left   and   was   followed   outside   by   Singh,
Petitioner, and Petitioner's brother.   (Tr. 1290:23-1291:9.)

Once in the parking lot of the Restaurant, Petitioner
and Baccus continued arguing.   (Tr. 1096:23-1097:16, 1290:23-
1293:9.)   Hernandez observed approximately fifteen minutes of more
arguing, Baccus then walked to his car and got into the driver's
seat  of  his  car.     (Tr.  1099:9-1099:18;  1294:11-1294:14.)
Petitioner then approached the driver's side of Baccus' car,
carrying a revolver in his waistband, and fired multiple gunshots
into the car at Baccus.   (Tr. 1099:19-1100:12; 1294:16-1295:21.)
Petitioner then placed the revolver back into his waistband, walked
away from the location, and his brother went after him.   (Tr.
1297:25-1298:9.)

Both  Hernandez  and  Singh  witnessed  the  shooting  of
Baccus, Singh standing approximately four to five feet away from
the incident and Hernandez watching from inside the establishment.
(Tr.  1099:19-1100:14;  1292:6-12;  1293:4-12;  1294:11-1295:19.)
Once Petitioner and his brother left the location, Hernandez went
out to the parking lot and saw Baccus in the driver's seat of the
car with blood on his face.   (Tr. 1298:24-1299:4.)   Following the
incident, Singh called the police from his cellular phone.   (Tr.
1101:2-1101:11.)   Neither Hernandez or Singh saw Baccus with
anything in his hands during the incident and Singh never heard

Baccus make any threats to Petitioner. (Tr. 1102:11-1102:23; 1296:19-1296:21.)

Following Singh's 911 call, multiple members of law enforcement responded to the scene, where they found Baccus slumped over, deceased, in the driver's seat of the car, with multiple gunshot wounds to the left side of his head. (Tr. 648:2-652:17; 694:7-698:22.) In addition, Ambulance Medical Technicians who responded to the scene, observed Baccus deceased in the driver's seat of the car, with bullet wounds to his head, and with his left hand underneath his leg and a flashlight in that hand. (Tr. 831:12-832:4; 837:9-844:2.) Baccus was removed from the car and taken to the Nassau County Medical Center morgue. (Tr. 946:12-946:17.)

Members of law enforcement searched the car Baccus was in and recovered the flashlight from the driver's side seat. (Tr. 947:17-948:9; 948:25-949:15.) In addition, law enforcement searched Baccus' body and recovered a badge from his jacket pocket. (Tr. 1426:20-1427:7.) Upon further investigation, it was determined that the badge was fake. (Tr. 1427:8-1428:4.) No firearm or ballistics evidence was recovered from the scene. (Tr. 999:7-999:23.) Following an autopsy performed by the Nassau County Medical Examiner's Office, eight bullets and one bullet fragment were removed from Baccus' head. (Tr. 1429:2-1429:15.) The autopsy

confirmed that any of the nine shots fired could have caused the death of Baccus. (Tr. 1580:13-1581:3.)

From interviewing witnesses and gathering evidence, law enforcement learned Petitioner's identity. They obtained cell site records mapping the location of Petitioner's cellular phone, revealing that Petitioner's phone was in Delaware. (Tr. 1239:10-1263:21.) Ultimately, law enforcement learned that Petitioner had returned to Nassau County and on December 30, 2013, Petitioner was arrested at 550 Sunrise Highway, Baldwin, New York. (Tr. 1625:4-1635:8.)

Upon arrest, Petitioner was transported to the homicide squad, during transport Petitioner was provided his <u>Miranda</u> warnings, following which Petitioner stated that his family was in danger. He subsequently requested to speak to an attorney when he was in the interview room at the precinct. (Tr. 1816:8-1821:20.) The next day, though Petitioner had stated that he wished he had an attorney, Petitioner informed law enforcement that Baccus was a bad news guy, had threatened him and flashed around a badge, and expressed continued concern for the safety of his family. (Tr. 1826:13-1827:22.) Members of law enforcement confirmed that Petitioner did not have a permit to carry a firearm. (Tr. 1830:14-1832:3.)

II.  The Suppression Hearing and the Trial

From October 14, 2014 through October 22, 2014, a suppression hearing was held in New York Supreme Court, Nassau County, during which the hearing court heard testimony from law enforcement witnesses to resolve evidentiary issues prior to trial. (See Hr'g Tr.)

Petitioner's jury trial began on October 27, 2014 in Supreme Court, Nassau County. At trial, the prosecution presented the testimony of numerous law enforcement witnesses involved in the investigation of this matter, as well as expert witnesses and civilian eyewitnesses Singh and Hernandez. (See Trial Transcripts.)  In addition, the prosecution introduced video surveillance obtained from Ay Caramba Restaurant that captured portions of the incident. (Tr. 1006:3-1021:5.)[2]  After the prosecution's case, defense counsel put on a case calling Det. Michael Carey, law enforcement witness, and Petitioner to testify on his own behalf. (Tr. 2131:25-2589:16.)  According to Petitioner's testimony, on the incident date he went to Ay Caramba Restaurant to spend time with his brother, planning to head to work that evening at the MJ Harlem AMC Theatres. (Tr. 2247:16-2248:13; 2256:1-2256:15.)  Petitioner stated that he was carrying a firearm on his hip while at the establishment because he was

_____

[2] The Court notes that pages 1007-08 are missing from the filed Transcript at D.E. 11-4.

working late at night and the security was not very good. (Tr. 2272:6-2272:23.) Petitioner stated that while at the establishment Singh introduced him to Baccus. (Tr. 2258:6-2258:21.) Petitioner stated that he engaged in a conversation with Baccus, and Baccus told him that he was a U.S. Marshal, that he was at Ay Caramba working security, and that he had a badge that he showed him. (Tr. 2259:9-2260:10.) Petitioner then observed Baccus become increasingly aggressive, fighting with patrons, including Singh, and Petitioner tried to calm Baccus down. (Tr. 2265:9-2268:9.) Petitioner testified that Baccus became physical with him, grabbed his arm and then sliced his brother's finger, repeatedly stating "let's fight" to the patrons. (Tr. 2271:17-2271:23.) The fighting continued, in that Baccus continued to verbally argue, and stated that he was carrying a firearm. (Tr. 2277:11-2278:9.) Petitioner stated that Hernandez kicked Baccus out of the establishment, and Baccus continued to say that the fight was not over. (Tr. 2280:14-2281:22.) Petitioner and Baccus exited the Restaurant. Eventually, Baccus entered the driver's seat of the car he drove to the establishment and Petitioner approached the car to try to calm Baccus down. (Tr. 2288:3-2298:11.) When Petitioner approached the car window, his brother was standing behind him, he alleged that Baccus pointed a gun at him and Petitioner believed Baccus was going to kill him or his brother. (Tr. 2299:2-2302:23.) Petitioner testified that

Baccus stated he was going to kill him, while pointing the gun at him, so Petitioner fired his gun at Baccus. (Tr. 2303:14-2304:22.) After he fired his gun, Petitioner got into his car and drove away, throwing his gun into a trashcan. (Tr. 2311:12-2311:25.) Petitioner stated that to protect the safety of his family he drove until he reached the state of Delaware but returned home the next day. (Tr. 2312:22-2313:13.)

Following the defense case, the Government re-called a member of law enforcement to testify and then rested. (Tr. 2656:20-2662:2.) Defense counsel and the Government provided their summations, the jury received instructions, and jury deliberations commenced. (Tr. 2712:23-2913:23.)

On December 22, 2014, the jury found Petitioner guilty of Manslaughter in the First Degree and Criminal Possession of a Weapon in the Second Degree, and he was acquitted of Murder in the Second Degree. (Tr. 3012:3-3012:24.)

III. The Post-Verdict Motion

On January 12, 2015, Petitioner, through counsel, filed a motion to set aside his verdict, pursuant to N.Y. C.P.L. § 330.30, based on allegations of juror misconduct, claiming the misconduct deprived him a fair trial. (See Mot. to Set Aside Verdict.)[3] These allegations were based on information from an affidavit from

_____

[3] The Motion to Set Aside Verdict can be found at D.E. 10-2 at ECF pp. 86-88 and continues at D.E. 10-3 at ECF pp. 1-26.

Juror Perkins (See Perkins Aff., D.E. 10-3, at ECF pp. 20-21), an affidavit from Juror McCauley (See McMauley Aff., D.E. 10-4, at ECF pp. 12-13), and statements made by Juror Greenberg to the press (See Newsday Articles, D.E. 10-3, at ECF pp. 23-25.)  The Perkins Affidavit indicated the following: (1) that some of the jurors "would come straight out of the court room right after we finished listening to testimony and come into the hallway even before we got into the jury room and started discussing the case and making comments about the defense attorneys" including criticisms of the way the defense attorneys spoke, dressed, and the style of cross-examination (Perkins Aff. ¶ 4); (2) that though the court instructed the jury not to zoom in on the video surveillance during deliberations, one of the jurors with technical expertise attempted to do so, but was unsuccessful (Perkins Aff. ¶ 9); and (3) that a group of jurors "contended that none of the prosecution witnesses were believable and that they were all lying and/or were not credible" though they ultimately voted for a guilty verdict (Perkins Aff. ¶ 10).  The McCauley Affidavit raised the following: (1) that an alternate juror, prior to deliberations, stated that Petitioner "was guilty because he had no business with the gun since it was unlawful"; (2) that upon hearing Petitioner testifying about "[b]ro time" regarding spending time with his brother, jurors were joking about it; (3) a group of jurors were referred to as "team prosecution"; and (4) that all jurors "reached a point where

we felt that the witnesses who testified were not credible."
(McCauley Aff. at ECF p. 12.)  Finally, Juror Greenberg stated to
the media that during deliberations the jurors engaged in a re-
enactment of the incident.  (Newsday Articles at 24.)

The Supreme Court of the State of New York, Nassau
County, denied the motion to set aside the verdict on May 11, 2015,
addressing each of Petitioner's allegations and rejecting them in
turn.  (See Court Order Denying Mot. to Set Aside Verdict, D.E.
10-4, at ECF pp. 46-58.)  The court, in pertinent part, held the
following:

> Here, none of the alleged jury misconduct
> warrants setting aside the verdict, or even
> granting a hearing on the defendant's motion.
> The allegations of misconduct that the
> defendant presses most forcefully – that of
> juror bias and premature deliberations – are
> largely conclusory, and thus unsupported with
> any factual allegations describing
> specifically what the jurors are supposed to
> have done wrong.  Other allegations – such as
> comments disparaging defense counsel – if
> true, are distasteful, but not beyond the pale
> of juror conduct witnessed in other cases
> which the courts have rightly found did not
> rise to the level of 'improper conduct . . .
> which may have affected a substantial right of
> the defendant.' [ ] Finally, some of the
> allegations – such as the jury room re-
> enactment of the shooting or the claim that
> some jurors, deemed "team prosecution" by one
> of their fellows, tried to persuade the others
> of the defendant's guilt – are not improper at
> all.

(See Court Order Denying Mot. to Set Aside Verdict at ECF p. 47
(quoting N.Y. C.P.L. § 330.30(2)).

IV.   The Sentencing

On May 8, 2015, Petitioner was sentenced by the court. (See S. Tr.)  The Government requested a term of twenty-five years of incarceration on the manslaughter charge to run concurrent with fifteen years on the criminal possession of a weapon charge.  (S. Tr. 11:1-11:8.)  Defense counsel asked the court to sentence Petitioner to concurrent terms and for both terms to be reasonable. (S. Tr. 16:22-17:13.)  The court sentenced Petitioner to twenty-five years on the manslaughter charge to run consecutive to a term of ten years on the criminal possession of a weapon charge, with a total imprisonment term of thirty-five years.  (S. Tr. 18:10-18:22.)

V.   The Appeal

On October 24, 2015, Petitioner appealed his conviction and sentence to the Second Department of the New York State Appellate Division.  On direct appeal, Petitioner argued that: (1) the Government failed to disprove Petitioner's justification defense beyond a reasonable doubt at trial; (2) the trial court erred by not providing a lesser included offense charge for Manslaughter in the Second Degree; (3) the missing witness charge requested by the Government was issued in error; (4) he was entitled to a hearing regarding the allegations of juror misconduct; and (5) his sentence was harsh and excessive.  (See App. Div. Br., D.E. 10-1, at ECF pp. 4-62.)  The Second Department

held that "the judgment is modified, as a matter of discretion in the interest of justice, by providing that the sentences imposed shall run concurrently with each other; as so modified, the judgment is affirmed." People v. Ortiz, 151 A.D.3d 754, 755, 57 N.Y.S.2d 183, 184 (2d Dep't 2017). First, the Second Department found that "[v]iewing the evidence in the light most favorable to the prosecution . . . it was legally sufficient to disprove the defendant's justification defense beyond a reasonable doubt." Id. (internal citations omitted). Regarding the lesser included offense claim, the Second Department held that "[t]here was no reasonable view of the evidence which would support a finding that the defendant fired nine shots into the unarmed victim's head without, at least, the intent to cause serious physical injury." Id. at 755, 57 N.Y.S.3d at 185 (internal citations omitted). As to the missing witness charge, the Second Department found that the trial court "providently exercised its discretion in granting the People's motion for a missing witness charge." Id. (internal citations omitted). In addition, the Second Department found that the trial court "properly denied, without a hearing, the defendant's motion to set aside the verdict pursuant to C.P.L. 330.30, based upon juror misconduct." Id. at 755-56, 57 N.Y.S.3d at 185 (internal citations omitted). Finally, the court modified the sentence, changing the sentences from running consecutively to running concurrently. Id.

Petitioner sought leave to appeal to the New York Court of Appeals, which was denied on August 15, 2017.[4] People v. Ortiz, 29 N.Y.3d 1131, 86 N.E.3d 573, 64 N.Y.S.3d 681 (2017). This Petition followed.

## DISCUSSION

The Court will first address the applicable legal standard before turning to the merits of the Petition.

## I. The Legal Standard

Congress enacted the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), to restrict "the power of federal courts to grant writs of habeas corpus to state prisoners." Williams v. Taylor, 529 U.S. 362, 399, 120 S. Ct. 1495, 1516, 146 L. Ed. 2d 389 (2000). A state prisoner seeking habeas corpus relief under Section 2254 must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254, as amended by AEDPA, provides, in part, that:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claims that was not adjudicated on the merits in State court

---

[4] The Court notes that in Petitioner's application for leave to appeal to the New York Court of Appeals, he stated that he was seeking review of Points I through III of his appeal, which represent the justification defense claim, the lesser included defense claim, and the missing witness charge claim. (See Appl. for Leave to Appeal, D.E. 10-2, at ECF pp. 77-80.)

> proceedings unless the adjudication of the
> claim –
> (1) resulted in a decision that was contrary
> to, or involved an unreasonable application
> of, clearly established [f]ederal law, as
> determined by the Supreme Court of the United
> States.

28 U.S.C. § 2254. AEDPA established a deferential standard of
relief, seeking to "avoid[ ] unnecessarily 'disturbing the State's
significant interest in repose for concluded litigation, denying
society the right to punish some admitted offenders, and intruding
on state sovereignty to a degree matched by few exercises of
federal judicial authority.'" Virginia v. LeBlanc, 137 S. Ct.
1726, 1729, 198 L. Ed. 2d 186 (2017) (quoting Harrington v.
Richter, 562 U.S. 86, 103, 131 S. Ct. 770, 787, 178 L. Ed. 2d 624
(2011)) (brackets omitted). Accordingly, a habeas corpus petition
is not a vehicle to relitigate every issue previously determined
in state court. Herrara v. Collins, 506 U.S. 390, 401, 113 S. Ct.
853, 861, 122 L. Ed. 2d 203 (1993). Ultimately, "the petitioner
bears the burden of proving by a preponderance of the evidence
that his constitutional rights have been violated." Jones v.
Vacco, 126 F.3d 408, 415 (2d Cir. 1997); see also Hawkins v.
Costello, 460 F.3d 238, 246 (2d Cir. 2006).

Therefore, a federal court may not grant a writ of habeas
corpus unless the state court's adjudication of the claim either:
"(1) resulted in a decision that was contrary to, or involved an
unreasonable application of, clearly established [f]ederal law, as

determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The Supreme Court has construed AEDPA "to give independent meaning to 'contrary [to] and 'unreasonable.'" Jones v. Stinson, 229 F.3d 112, 119 (2d Cir. 2000). A state court's decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case different than [the Supreme] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412-13, 120 S. Ct. at 1523. A decision involves "an unreasonable application" of clearly established federal law when a state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413, 120 S. Ct. at 1523. This standard does not require that all reasonable jurists agree that the state court was wrong; rather, the standard "falls somewhere between 'merely erroneous and unreasonable to all reasonable jurists.'" Jones, 229 F.3d at 119 (quoting Francis S. v. Stone, 221 F.3d 100, 109 (2d Cir. 2000)). AEDPA "'imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt.'" Jones v. Murphy,

694 F.3d 225, 234 (2d Cir. 2012) (quoting Hardy v. Cross, 565 U.S. 65, 66, 132 S. Ct. 490, 491, 181 L. Ed. 2d 468 (2011)). Section 2254(d), as amended by AEDPA, "stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." Harrington, 562 U.S. at 102, 131 S. Ct. at 786.

Assuming that a petitioner's claims are cognizable on habeas review, a petitioner must exhaust state court remedies before coming to federal court. Exhaustion of state court remedies requires that a petitioner fairly present the claim in state court, allowing the state court the "'opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'" See Jackson v. Edwards, 404 F.3d 612, 619 (2d Cir. 2005) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 512, 30 L. Ed. 2d 438 (1971)). "A petitioner has 'fairly presented' his claim only if he has 'informed the state court of both the factual and the legal premises of the claim he asserts in federal court.'" Jones v. Keane, 329 F.3d 290, 294-95 (2d Cir. 2003) (quoting Dorsey v. Kelly, 112 F.3d 50, 52 (2d Cir. 1997)). "Specifically, [petitioner] must have set forth in state court all of the essential factual allegations asserted in his federal petition; if material factual allegations were omitted, the state court has not

had a fair opportunity to rule on the claim." Daye v. Att'y Gen. of N.Y., 696 F.2d 186, 191-92 (2d Cir. 1982) (collecting cases).

In addition, a federal court will not review a habeas petition if a petitioner's claims were decided at the state level on "independent and adequate" state procedural grounds. Coleman v. Thompson, 501 U.S. 722, 731-32, 111 S. Ct. 2546, 2555, 115 L. Ed. 2d 640 (1991). This procedural bar applies even if the state court addressed the merits in the alternative but decided the claim on independent procedural grounds. Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990).

To obtain review of procedurally barred claims, a state prisoner must show either (1) "cause for the default and actual prejudice as a result" or (2) actual innocence. Coleman, 501 U.S. at 750, 111 S. Ct. at 2565.

II. Application

In the instant Petition, Petitioner renews the arguments made in his direct appeal, specifically that: (1) the prosecution failed to disprove the justification defense beyond a reasonable doubt ("Justification Defense Claim"); (2) the trial court erred by failing to provide a jury charge for manslaughter in the second degree as a lesser included offense ("Lesser Included Defense Claim"); (3) the trial court's issuance of a missing witness charge was in error ("Missing Witness Charge Claim"); (4) Petitioner was entitled to a hearing based on allegations of juror misconduct

17

("Juror Misconduct Claim"); and (5) the imposed sentence was harsh and excessive ("Sentence Claim"). (See Pet., D.E. 1, at ECF pp. 5-17.) The Court proceeds to address each of the claims in turn.

The Court acknowledges that pro se submissions, like those from Petitioner, require flexible construction, and so the Court must interpret them "'to raise the strongest arguments that they suggest.'" Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). But this leeway does not excuse Petitioner "'from compl[ying] with relevant rules of procedural and substantive law,'" Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (quoting Birl v. Estelle, 660 F.2d 592, 593 (5th Cir. 1981)), as he "bears the burden of proving by a preponderance of the evidence that his constitutional rights have been violated" Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997).

A. Justification Defense Claim

Petitioner contends that he is entitled to habeas relief as the prosecution failed to disprove his justification defense claim beyond a reasonable doubt, stating that "[t]he jury's acquittal of [s]econd degree murder and instead convicting the [P]etitioner of a lesser included offense of manslaughter in the first degree, suggested at least a partial acceptance of [P]etitioner's testimony that he acted in self-defense." (Pet. at ECF p. 5.) This claim was raised on direct appeal and rejected on

the merits by the Appellate Division, which stated that "[v]iewing the evidence in the light most favorable to the prosecution, we find that it was legally sufficient to disprove the [Petitioner's] justification defense beyond a reasonable doubt." Ortiz, 151 A.D.3d at 755 (citations omitted). As this claim was denied on the merits, the Court applies AEDPA deference and finds that the state court's ruling was not contrary to, or an unreasonable application of, clearly established federal law.

When a Petitioner claims that there was insufficient evidence to support a conviction, the Court considers whether there was "sufficient evidence to justify a rational trier of the facts to find guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 313, 99 S. Ct. 2781, 2785, 61 L. Ed. 2d 560 (1979). "This standard applies with equal force to the sufficiency of proof as to a defense, such as justification . . . which the prosecution is required to disprove beyond a reasonable doubt." Ledesma v. Cunningham, No. 03-CV-6322, 2004 WL 1775677, at *11 (S.D.N.Y. Aug. 10, 2004) (Report and Recommendation) (internal quotation marks and citation omitted); see also Morales v. Jones, No. 86-CV-7799, 1988 WL 90379, at *2 (S.D.N.Y. Jul. 26, 1988). "[A] challenge to the sufficiency of the evidence presents the question 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"

Dixon v. Miller, 293 F.3d 74, 81 (2d Cir. 2002) (quoting Jackson, 443 U.S. at 307, 99 S. Ct. at 2783 (emphasis in original)). Moreover, "[a] defendant challenging a conviction on sufficiency grounds bears a heavy burden" and "[t]he reviewing court must consider the evidence in the light most favorable to the government, crediting every inference that the jury might have drawn in favor of the government." United States v. Hernandez, 85 F.3d 1023, 1030 (2d Cir. 1996).

To evaluate the sufficiency of the evidence, "[a] federal court must look to state law to determine the elements of the crime." Quartararo v. Hanslmaier, 186 F.3d 91, 97 (2d Cir. 1999). Petitioner's sufficiency claim is entirely focused on his justification defense. Under New York law, in pertinent part, "[a] person may not use deadly physical force upon another person . . . unless: (a) [t]he actor reasonably believes that such other person is using or about to use deadly physical force. Even in such case, however, the actor may not use deadly physical force if he or she knows that with complete personal safety, to oneself and others he or she may avoid the necessity of so doing by retreating." N.Y. PENAL LAW § 35.15(2)(a). Viewing the facts in the light most favorable to the state, the Court finds that based on the evidence in the underlying record, a rational trier of fact could have certainly rejected Petitioner's justification defense and found guilt beyond a reasonable doubt. The evidence presented

at trial demonstrated that Petitioner, while armed, approached Baccus while he was seated in a car. (Tr. 1099:7-1100:14; 1294:11-1294:17; 2298:12-2303:20.) Though Petitioner maintains that Baccus threatened to kill him and pointed a firearm in his direction, this claim was contradicted at trial by other eyewitness's accounts of events. (Tr. 1099:7-1102:23; 1294:11-1296:21; 2298:12-2303:20.) As discussed above, the two eyewitnesses who testified both stated they never saw Baccus with anything in his hands prior to the shooting and never heard Baccus make any threats to Petitioner. (Tr. 1102:11-1102:23; 1296:19-1296:21.) In addition, when law enforcement arrived at the scene, they did not recover a firearm near or inside Baccus' car. (Tr. 999:7-999:12.) Accordingly, though Petitioner argues otherwise, there was sufficient evidence presented at trial to contradict Petitioner's version of events and to support the jury's rejection of Petitioner's justification defense.

Further, to the extent that Petitioner is attempting to challenge the weight of the evidence presented at trial, a weight of the evidence claim is not cognizable in a habeas corpus proceeding, as it is purely a state law claim. See Correa v. Duncan, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001) ("A 'weight of the evidence' argument is a pure state law claim grounded in New York Criminal Procedure Law § 470.15(5), whereas a legal sufficiency claim is based on federal due process principles.");

see also Lewis v. Jeffers, 497 U.S. 764, 780, 110 S. Ct. 3092, 3102, 111 L. Ed. 2d 6062 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law . . . ."). Accordingly, this claim is not reviewable.

In sum, upon review of the underlying record in its entirety, the Court finds that Petitioner did not meet his burden and show that there was insufficient evidence to disprove his justification defense and the Court rejects this claim.

B. Lesser Included Offense Claim

Petitioner claims that he was "entitled to a charge of manslaughter in the second degree as a lesser included offense." (See Pet. at 7.) The Appellate Division rejected this claim, finding that the trial court "properly refused to instruct the jury with respect to manslaughter in the second degree as a lesser-included offense of intentional murder," and emphasizing that "[t]here was no reasonable view of the evidence which would support a finding that the defendant fired nine shots into the unarmed victim's head without, at least, the intent to cause serious physical injury." Ortiz, 151 A.D.3d at 755 (internal citations omitted). Applying AEDPA's deferential standard, the Court finds that the Appellate Division's determination was not contrary to, nor was it an unreasonable application of, clearly established federal law.

First, the Court notes that in Beck v. Alabama, the Supreme Court held that a trial court must present instructions on lesser-included offenses to the jury if warranted by the evidence in capital cases. See Beck v. Alabama, 447 U.S. 625, 637-38, 100 S. Ct. 2382, 65 L. Ed. 2d 392 (1980). However, "neither the Supreme Court nor the Second Circuit has decided whether the failure to instruct the jury on lesser-included offenses in noncapital cases is a constitutional issue that may be considered on a habeas petition." Sostre v. Lee, No. 11-CV-3439, 2013 WL 3756474, at *6 (E.D.N.Y. Jul. 15, 2013) (citing to Beck, 447 U.S. at 637-38, 100 S. Ct. 2382.) Further, it is established that "habeas corpus cannot be used as a vehicle to create new constitutional rules of criminal procedure." Teague v. Lane, 489 U.S. 288, 316, 109 S. Ct. 1060, 1078, 103 L. Ed 2d 334 (1989). The Second Circuit has found that "a decision interpreting the Constitution to require the submission of instructions on lesser-included offenses in non-capital cases would involve the announcement of a new constitutional rule" and as such, these claims are precluded in a habeas corpus proceeding. Sostre, 2013 WL 3756474 at *6 (citing Jones v. Hoffman, 86 F.3d 46, 48 (2d Cir. 1996)); see also Bien v. Smith, 546 F. Supp. 2d 26, 43 (E.D.N.Y. 2008) (stating that "in this circuit, habeas review of a state trial court's failure to instruct on lesser included offenses in noncapital cases is precluded.") Therefore, as this is a non-

capital case, the trial court's refusal to provide a jury instruction as to a lesser-included offense is precluded from habeas review.

Assuming, _arguendo_, that this was a proper claim under AEDPA, the trial court's refusal to include the jury instruction for manslaughter in the second degree was not error. Generally, "[a] trial judge must charge the jury on lesser included offenses when (1) it is theoretically impossible to commit the greater crime without committing the lesser and (2) a reasonable view of the evidence would permit the jury to find that the defendant had committed the lesser, but not the greater, offense." Rice v. Hoke, 846 F.2d 160, 165 (2d Cir. 1988) (citations omitted). According to New York state law, "[a] person is guilty of murder in the second degree when: [w]ith intent to cause the death of another person, he causes the death of such person." N.Y. PENAL LAW § 125.25(1). This provision of the New York Penal Law requires a defendant to act intentionally, and: "[a] person acts intentionally with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct." N.Y. PENAL LAW § 15.05(1). Petitioner claims that he was entitled to an instruction for manslaughter in the second degree as a lesser-included offense, which states that "[a] person is guilty of manslaughter in the second degree when: [h]e recklessly causes the

death of another person." N.Y. PENAL LAW § 125.15(1). Manslaughter in the second degree requires a reckless mental state and "[a] person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists." N.Y. PENAL LAW § 15.05(3). Considering these state law definitions and the evidence presented during the trial, this Court determines that the Appellate Division's finding that there is no reasonable view of the evidence in this case that supports that Petitioner acted recklessly, as opposed to intentionally, when he shot Baccus nine times in the head from close range is reasonable. Thus, this claim is denied.

C. Missing Witness Charge Claim

Petitioner next argues that he is entitled to habeas relief because the trial court improperly issued a missing witness charge based on defense counsel not calling Petitioner's brother to testify, or, in the alternative, the trial court should have submitted the issue of "availability" in relation to this witness to the jury. (See Pet. at ECF pp. 9-10.) This argument was raised on Petitioner's direct appeal and the Appellate Division found that the trial court "providently exercised its discretion in granting the People's motion for a missing witness charge." Ortiz, 151 A.D.3d at 755.

Generally, improper jury instructions only violate due process if they "fail[ ] to give effect to [the] requirement" that the Government must prove every element of a charged offense beyond a reasonable doubt. See Middleton v. McNeil, 541 U.S. 433, 437, 124 S. Ct. 1830, 1832, 158 L. Ed. 2d 701 (2004) (per curiam). "[A] state prisoner making a claim of improper jury instructions faces a substantial burden." DelValle v. Armstrong, 306 F.3d 1197, 1200 (2d Cir. 2002). A petitioner must demonstrate that "'the ailing instruction by itself so infected the entire trial that the resulting conviction violat[ed] due process,' not merely [that] 'the instruction is undesirable, erroneous, or even universally condemned.'" Id. at 1200-01 (quoting Henderson v. Kibbe, 431 U.S. 145, 154, 97 S. Ct. 1730, 1737, 52 L. Ed. 2d 203 (1977)). Thus, "not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation." Middleton, 541 U.S. at 437, 124 S. Ct. at 1832. Generally, "[w]hether a missing witness charge should be given lies in the sound discretion of the trial court." Reid v. Senkowski, 961 F.2d 374, 377 (2d Cir. 1992) (internal quotation marks and citations omitted).

Under New York state law, to obtain a missing witness charge "it must be shown that the uncalled witness is knowledgeable about a material issue upon which evidence is already in the case; that the witness would naturally be expected to provide

noncumulative testimony favorable to the party who has not called him, and that the witness is available to such party." <u>People v. Kitching</u>, 78 N.Y.2d 532, 536, 583 N.E.2d 944, 945-46, 577 N.Y.S.2d 231 (1991) (internal quotation marks and citation omitted).  In other words, "[a] missing witness charge is appropriate if it is shown that the party against whom the charge is given had the ability to locate and produce the witness and there was such a relationship, in legal status or on the facts, as to make it natural to expect the party to have called the witness to testify in his favor." <u>People v. Keen</u>, 94 N.Y.2d 533, 539, 728 N.E.2d 979, 707 N.Y.S.2d 380 (2000) (internal quotation marks and citations omitted).  Further, "[i]n order to defeat the request for a missing witness charge, the opposing party must demonstrate that the witness is not knowledgeable about the issue, that the issue is not material or relevant, that the testimony from the missing witness would be merely cumulative to other evidence, that the witness is not available or that the witness is not under the party's control such that the witness would be expected to testify in the party's favor." <u>Id.</u>

It is clear that Petitioner's brother was an uncalled witness at trial and would be knowledgeable about the justification defense in this case.  According to the evidence presented at trial, particularly during Petitioner's own testimony, it was established that Petitioner's brother was standing directly behind

him during the shooting, thus it is reasonable to find that he would be able to testify about whether he was able to view Baccus pointing a firearm at Petitioner prior to Petitioner shooting Baccus. (Tr. 2291:20-2300:2.) In addition, the two have a close familial relationship and it is reasonable to expect that Petitioner's brother would testify in his favor. (Tr. 2248:14-2248:16.) The trial court did not abuse its discretion in giving the charge.

Even if the missing witness charge was delivered in error, such error was harmless. In Brecht v. Abrahamson, the Supreme Court found that "the standard for determining whether a conviction must be set aside because of federal constitutional error" is whether the error "'had a substantial and injurious effect or influence in determining the jury's verdict.'" Brecht, 507 U.S. 619, 622-23, 113 S. Ct. 1710, 1713-14, 123 L. Ed. 2d 353 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253, 90 L. Ed. 1557 (1946)). As discussed above, eyewitnesses testified that Petitioner shot Baccus multiple times while Baccus was seated in a car, but no eyewitness testified that they heard Baccus threaten Petitioner's life or saw him possess a firearm during the incident. Petitioner admitted to the shooting of Baccus, maintaining that he did so because he was threatened and a firearm was pointed at him, but no firearm was recovered from the vehicle or from Baccus' person. Considering the evidence

28

in its totality, even if providing a missing witness charge regarding Petitioner's brother was error, the Court does not find that it prejudiced Petitioner or had an effect on the jury's verdict due to the amount of evidence presented during trial.

D. <u>Juror Misconduct Claim</u>

Petitioner further claims that he is entitled to habeas relief because of allegations of juror misconduct and because the trial court erred by declining to hold a hearing regarding the alleged misconduct. (See Pet. at ECF p. 11.) Specifically, Petitioner argues that:

> Throughout the case, the Court repeatedly instructed the jury not to discuss the case amongst themselves until after all the evidence was in, and even then not until instructed to do so by the Court. However, those instructions were ignored. After the jury had rendered its verdict, Juror Perkins and Juror McCauley provided sworn affidavits indicating that certain named jurors had engaged in pervasive pre-deliberation discussions about the facts of the case on a daily basis; and that the foreperson had tried to discourage them from talking about the case but ultimately gave up trying to stop them. . . . We submit that the trial court's failure to hold a hearing to determine precisely what was said amongst the jurors during their daily pre-deliberation discussions, was reversible error because as the Court had stated, '. . . Neither juror said that the pre-trial discussions would have changed the jurors' vote(s).' By it[ ]s very nature, the above statement by the court, presupposes the jurors had reached a determination of guilt.

(Pet. at 11-13.) This argument was first presented in the motion

to set aside the verdict and based largely on juror affidavits. The claims were denied in their entirety by the trial court. The court found that "[n]either juror claims that her verdict, or any other juror's [verdict] was the result of coercion or intimidation; nor does either juror express any doubt in the soundness of her own determination that the defendant was, in fact, guilty of manslaughter and weapons possession." (Court Order Denying Mot. to Set Aside Verdict at 46.)

As previously discussed, the Perkins Affidavit expressed concern regarding the manner in which the jurors criticized the defense attorney, mentioning that jurors insulted how the defense attorney spoke, dressed, and his method of cross-examination. (See Perkins Aff. at 20-21.) The trial court characterized these statements as "distasteful" but found they did not rise to the level of juror misconduct, stating "[i]t would be simply naïve to think that some jurors do not make comments, even tasteless comments, about attorneys--how they dress, how they talk, how they conduct themselves and how they examine witnesses. Such comments do not lead to a logical syllogism that the juror is biased against the party the attorney represents." (See Court Order Denying Mot. to Set Aside Verdict at ECF pp. 48-50.) Also, the Perkins Affidavit stated that one of the jurors had technical expertise and made attempts to zoom in on video surveillance during deliberations, against the instructions of the trial judge, but

ultimately was unsuccessful in zooming in on the video. (Perkins Aff. ¶ 9.) The trial court rejected this claim, finding that "[a] <u>failed</u> attempt to engage the zoom function, if true, is hardly a basis for vacation of the verdict." (Court Order Denying Mot. to Set Aside Verdict at ECF p. 58 (emphasis in original).)

The McCauley Affidavit stated that one of the alternate jurors made a statement prior to deliberations that Petitioner must be found guilty because he should never have had the gun in his possession. (McCauley Aff. at ECF p. 12.) The trial court rejected this, stating that "[t]he defendant's contention that such purported comment affected the fairness of his trial is meritless. Initially, Ms. McCauley's affidavit does not allege that this comment led to any discussion; more importantly, she does not allege that it had any effect on her verdict or the verdict of any other jur[or]; and the alternate juror who allegedly made the comment did not ultimately deliberate." (Court Order Denying Mot. to Set Aside Verdict at ECF p. 56.) In addition, one of the jurors was quoted in the press indicating that during deliberations, the jurors engaged in a re-enactment of the shooting. (See Newsday Articles at ECF pp. 23-25.) The trial court reviewed this contention and found that such a re-enactment was not improper. (Court Order Denying Mot. to Set Aside Verdict at ECF pp. 54-56.) Further, the trial court rejected the statements in the McCauley Affidavit that as some of the jurors

were referred to as "team prosecution" that it established juror misconduct. (Court Order Denying Mot. to Set Aside Verdict at ECF p. 57.)

Primarily, the juror affidavits focused heavily on allegations of premature deliberations. In particular, the Perkins Affidavit stated that "[o]ne of the things that struck me was that very early on in the trial a number of the jurors would come straight out of the court room right after we finished listening to testimony and come into the hallway even before we got into the jury room and started discussing the case and making comments about the defense attorneys." (Perkins Aff. ¶ 4.)

The trial court reviewed the claims of premature deliberations and found them to be "conclusory and devoid of any factual support" and that "even if true, do not raise a cognizable legal issue." (Court Order Denying Mot. to Set Aside Verdict at ECF pp. 51-53.)

Following the rejection of these claims, on direct appeal Petitioner argued that he should have been granted a hearing regarding his claims of juror misconduct. The Appellate Division found that the court "properly denied" the motion to set aside the verdict "without a hearing . . . based upon juror misconduct." Ortiz, 151 A.D.3d at 755, 57 N.Y.S.3d at 185.

As a threshold matter, the Court notes that the Government argues that this claim is procedurally barred, as

Petitioner included this claim in his direct appeal to the Appellate Division but did not name this claim in his application for leave to appeal to the New York State Court of Appeals. (See Gov't. Br., D.E. 10, at 46-52.) The Court finds that by presenting the other claims to the Court of Appeals, but omitting this claim, Petitioner abandoned this claim. See Galdamez v. Keane, 394 F.3d 68, 74 (2d Cir. 2005); see also Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991) ("The fair import of petitioner's submission to the Court of Appeals, consisting of his brief to the Appellate Division that raised three claims and a letter to the Court of Appeals arguing only one of them, was that the other two had been abandoned.") Here, Petitioner did not fairly present this claim to the appropriate state courts "in order to give the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (quoting Picard, 404 U.S. at 275, 92 S. Ct. at 512). However, Petitioner no longer has state court remedies available, as he has already proceeded through the direct appeal process, thus this claim is procedurally defaulted. See Moss v. New York, No. 10-CV-5840, 2014 WL 585928, at *9 (E.D.N.Y. Feb. 12, 2014). To overcome this, a petitioner must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental

miscarriage of justice." Coleman, 501 U.S. at 750, 111 S. Ct. at 2565. Petitioner has not provided a justification for his failure to properly raise this claim in his application to the New York State Court of Appeals, nor has Petitioner demonstrated that denying habeas relief would result in a miscarriage of justice. Accordingly, this claim is procedurally barred. Nonetheless, the Court proceeds to address the substance of this claim and concludes that it does not provide a basis for habeas relief.

"As a general matter, courts are hesitant to impeach a jury verdict based on post-conviction juror affidavits unless an external influence prejudiced the defendant." South v. Lee, No. 13-CV-7261, 2017 WL 4857588, at *10 (S.D.N.Y. Oct. 25, 2017). "A criminal defendant challenging the impartiality of his jury panel has the burden of proving prejudice. In order words, the petitioner must show the actual existence of such an opinion in the mind of the juror as will raise the presumption of partiality." Black v. Graham, No. 11-CV-1495, 2014 WL 496878, at *6 (S.D.N.Y. Feb. 4, 2014) (internal quotation marks and citation omitted). The Court acknowledges that when a trial court "instructs a jury to refrain from premature deliberation . . . and the jury nonetheless discusses the case before the close of trial, that premature deliberation may constitute juror misconduct" that deprives a defendant of a fair trial. United States v. Cox, 324 F.3d 77, 86 (2d Cir. 2003). However, "[t]he trial court is

34

afforded broad flexibility in such matters, 'especially when the alleged prejudice results from statements made by the jurors themselves, and not from media publicity or other outside influences.'" Jamison v. Girdich, No. 03-CV-4826, 2005 WL 2338660, at *7 (S.D.N.Y. Sept. 26, 2005) (quoting Cox, 324 F.3d at 86)).

In the instant matter, the trial court judge considered the juror affidavits accompanying Petitioner's motion to set aside the verdict and rejected all of Petitioner's claims. The Court, applying the deferential standard of AEDPA, finds that the state court's determination that the information provided in the affidavits failed to rise to the level of juror misconduct that compromised Petitioner's right to a fair trial, and agrees that the assertions made in the affidavits were vague and speculative.

Regarding evidentiary hearings in this context, it is well-settled that "[a] trial court is required to conduct a post-verdict evidentiary hearing on the issue of juror misconduct only when 'there is clear, strong, substantial and incontrovertible evidence . . . that a specific, nonspeculative impropriety has occurred which could have prejudiced the trial of a defendant.'" Williams v. Artus, 691 F. Supp. 2d 515, 526 (S.D.N.Y. 2010) (quoting United States v. Sun Myung Moon, 718 F.2d 1210, 1234 (2d Cir. 1983) (ellipsis in original). In addition, "[t]he trial judge is accorded broad discretion in treating charges of juror misconduct." United States v. Sattar, 395 F. Supp. 2d 66, 73

(S.D.N.Y. 2005) (citing Wheel v. Robinson, 34 F.3d 60, 65 (2d Cir. 1994)).  Accordingly, given the state court's discretion in terms of whether to grant such a hearing, the Court finds that the state court's determination not to hold an evidentiary hearing was not contrary to, or an unreasonable application of federal law.

    E.  Sentence Claim

        Petitioner argues that he is entitled to habeas relief as his sentence is harsh and excessive, stating that "he shouldn't be penalized for exercising his right to go to trial and that his sentence should be reduced considering the circumstances of this case to time served."  (See Pet. at ECF p. 17.)  This claim was raised in Petitioner's direct appeal and the Appellate Division found that his consecutive terms of twenty-five years and ten years of imprisonment was excessive, stating that "as a matter of discretion in the interest of justice . . . the sentences imposed shall run concurrently with each other."  Ortiz, 151 A.D.3d at 755, 57 N.Y.S.3d at 184.

        It is well settled that "[n]o federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law."  White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992); McCalvin v. Senkowski, 160 F. Supp. 2d 586, 589 (S.D.N.Y. 2001) ("Sentencing decisions are not cognizable on habeas corpus review unless the sentence imposed falls outside the range prescribed by law."); Alfini v. Lord, 245 F. Supp. 2d 493,

502 (E.D.N.Y. 2003) ("It is well settled that an excessive sentence claim may not be raised as grounds for habeas corpus relief if the sentence is within the range prescribed by state law." (collecting cases)). According to the New York State Penal Law at the time of conviction, the maximum sentence permitted for a conviction for Manslaughter in the First Degree, a Class "B" Violent Felony, was twenty-five years of imprisonment, and for a conviction of Criminal Possession of a Weapons in the Second Degree, a Class "C" Violent Felony, was fifteen years of imprisonment. See N.Y. PENAL LAW §§ 120.20(1), 70.02(1)(a), 265.03, 70.02(1)(b). Therefore, Petitioner's adjusted sentence of twenty-five years for the manslaughter conviction running concurrent with ten years for the weapons conviction falls within what was permitted by the New York State Penal Law. The Appellate Division exercised its interest of justice authority and modified. Accordingly, as Petitioner's sentence does not exceed what is permitted by state law, there is no federal question for habeas review.

## CONCLUSION

Petitioner's writ of habeas corpus (D.E. 1) is DENIED. The Court declines to issue a certificate of appealability because the Petitioner has not made a substantial showing that he was denied a constitutional right. See 28 U.S.C. § 2253(c)(2). The Court also certifies that any appeal of this Order would not be taken in good faith, and thus his in forma pauperis status is

denied for the purposes of any appeal.  Coppedge v. United States,
369 U.S. 438, 444-45, 82 S. Ct. 917, 921, 8 L. Ed. 2d 21 (1962).
The Clerk of the Court is respectfully directed to CLOSE this case
and mail a copy of this Order to Petitioner.


                                SO ORDERED.


                                /s/ JOANNA SEYBERT_____
                                Joanna Seybert, U.S.D.J.

Dated:  August __23__, 2019
        Central Islip, New York